```
                   UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF CALIFORNIA
                         WESTERN DIVISION
```

| | |
|---|---|
| LINDA GALLEGOS,<br><br>        Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | No. ED CV 09-00685-VBK<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>(Social Security Case) |

    This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

    Plaintiff raises the following issues:

    1.    Whether the Administrative Law Judge ("ALJ") properly

considered Plaintiff's obesity;
2. Whether the ALJ properly represented the evidence and properly considered the adverse side effects of Plaintiff's medications;
3. Whether the ALJ properly considered Plaintiff's testimony and made proper credibility findings; and
4. Whether the ALJ properly considered the treating psychiatrist's opinion.

(JS at 2-3.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

**I**

**THE ALJ DID NOT ERR IN FAILING TO SPECIFICALLY DISCUSS**

**ANY IMPACT OF PLAINTIFF'S OBESITY**

Based on a treatment note of October 22, 2007, indicating that Plaintiff has a body mass index ("BMI") of 31 (AT 262), Plaintiff asserts that she suffers from obesity. (JS at 3.) The Commissioner does not dispute that Plaintiff meets this criterion. The dispute set forth in the first issue is whether or not the ALJ erred by failing to specifically discuss Plaintiff's obesity. Plaintiff asserts that error was committed, because it was required that the ALJ discuss the effects of Plaintiff's obesity on her other impairments, such as COPD and asthma. Citing the Ninth Circuit opinion in <u>Celaya v. Halter</u>, 332 F.3d 1177, 1181 (9th Cir. 2003), and the requirements of Social Security Ruling ("SSR") 02-01p, Plaintiff argues that the ALJ was

2

required to specifically discuss the impact of obesity on her severe impairments.

Based on amendments to the regulations enacted in 1999, a diagnosis of obesity no longer imports a presumption of disability. (See SSR 02-01p.) Further, Plaintiff's interpretation of the holding of Celaya v. Halter is incorrect, in that it is only required that a discussion of the effects of a claimant's obesity must occur if there is evidence of its impact upon a claimant's health. (See Celaya, 332 F.3d 1177, 1181 n.1.)

The Circuit's later decision in Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005) eliminates any possible ambiguity in this regard. Where there is no evidence that a claimant's obesity exacerbates other impairments, the ALJ does not commit reversible error by not considering obesity at Step Two in the sequential evaluation process (e.g., the determination of whether or not a claimant has a severe impairment). Further, in a case in which obesity is not a severe impairment, the ALJ is not required to make an equivalence analysis at Step Three. ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." [400 F.3d at 673, citations omitted].)

Considering these factors, the ALJ did not err in his decision by omitting any specific discussion of Plaintiff's obesity. At no time in the administrative proceedings, or in this litigation, has Plaintiff pointed to evidence that she has any functional limitations due to her obesity. In fact, the evidence is to the contrary. Plaintiff's treating physicians observed her height and weight, but

noted that she has a stable and normal gait (AR 337), that she is able to walk on her heels and toes (AR 163), and that during an examination, she had no difficulty getting on and off the examination table (AR 161). Further, there is no evidence that her obesity has any impact on her COPD or respiratory functioning. Chest x-rays revealed only mild congestion and a small amount of fluid in the lungs. (AR 234.)

Consequently, the Court fails to find any error concerning this issue.

**II**

**THE ALJ COMMITTED NO ERROR WITH REGARD TO ASSESSING**

**POTENTIAL DEBILITATING SIDE EFFECTS OF MEDICATIONS**

In her second issue, Plaintiff asserts that the ALJ failed to properly consider adverse side effects of her medications. Plaintiff notes that in a Disability Report, she asserted that she takes Albuterol for breathing and asthma, and that the side effects are that they cause her to feel "shaky." (AR 99.) In another Disability Report, she asserted that she takes Prednisone, which causes her "weight gain." (AR 125.)[1] At her administrative hearing, she testified that she was prescribed the drug Tramodol for pain, but it makes her "act stupid and stuff." She indicates she does not like to take it, and in fact, there is no indication in the record that she does take it on a regular basis. (AR 39.) Plaintiff also testified that Prednisone "makes her crazy," meaning that she "just [doesn't] think

---

[1] In the same Disability Report, she indicates she takes Albuterol, but has no side effects from it.

4

right." (AR 42-43.)[2]

Based on these one-time claims, Plaintiff asserts that the ALJ failed to properly assess the side effects of medications. The Court disagrees, for reasons that will be explained.

Social Security Ruling ("SSR") 96-7p does require that consideration be given to the "type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." (See also 20 C.F.R. §404.1529(c)(3)(iv), 20 C.F.R. §416.929(3)(3)(iv).) In addition, Ninth Circuit case law mandates that there must be some consideration of subjectively asserted side effects. See Varney v. Secretary of Health and Human Services, 846 F.2d 581, 585 (9th Cir. 1988). In Varney, the ALJ noted Varney's contention that she takes various medications, and acknowledged her testimony as to side effects, but failed to make any findings with regard to the side effects. The Circuit observed that side effects of medications are like pain in that they are highly idiosyncratic, and thus, a claimant's testimony as to their limiting effects should not be "trivialized." (Id. at 585.) Thus, Varney requires that, in a case in which subjective limitations or side effects of medication are claimed, the ALJ "must support that decision with specific findings similar to those required for excess pain testimony, as long as the side effects are in fact associated with the claimant's medication(s)." (Id.)

In the case of subjective complaints of pain, established Ninth Circuit case precedent requires that such complaints must be

---

[2]   This side effect was not identified by her as being associated with her Prednisone use in the same disability report. (AR 125.)

5

1  accompanied by medical evidence, and in fact, the complaints may be
2  disregarded if they are unsupported by clinical findings. See Howard
3  v. Heckler, 782 F.2d 1484 (9th Cir. 1986), citing Taylor v. Heckler,
4  765 F.2d 872, 876 (9th Cir. 1985), Maounis v. Heckler, 738 F.2d 1032,
5  1034 (9th Cir. 1984).
6      In this case, the ALJ's opinion differs from the one considered
7  by the Ninth Circuit in Varney, in that the ALJ acknowledged
8  Plaintiff's complaints from side effects of medications, but held that
9  there was no objective evidence of any complaints of severe adverse
10 side effects. (AR 11.)  Moreover, Plaintiff does not dispute that
11 there is absolutely no medical documentation of side effects of
12 medication.  Simply put, on no occasion did Plaintiff complain to a
13 medical provider or treatment source that she suffered any of these
14 side effects of medications.  Each of the asserted side effects cited
15 by Plaintiff in this litigation is a one-time claim she made on
16 administrative forms.  Moreover, Plaintiff contradicted herself
17 significantly even in these forms.  As the Court has noted, with
18 regard to asserted side effects of Prednisone, on one occasion she
19 claimed that the side effects were "weight gain" (AR 125), while
20 during her testimony, she asserted that taking Prednisone "makes her
21 crazy." (AR 42-43.)  Moreover, in one administrative document, a
22 Disability Report, she claimed that Albuterol made her "shaky" (AR
23 99), while in another Disability Report, she claimed no side effects
24 of Albuterol. (AR 125.)  This combination of a complete lack of
25 clinical evidence to support side effects, accompanied by serious
26 internal contradictions in Plaintiff's own self-reporting, supports
27 the conclusion that Plaintiff really has no adverse functional side
28 effects from medications.  If it were simply the case that a claimant

could make subjective but undocumented complaints of side effects of medications, and that such side effects might be found in the medical literature, then according credibility to such assertions simply on that basis would be nonsensical. As suggested by the Ninth Circuit in Varney, the analysis of side effects of medications is similar to that concerning subjective pain testimony. It is simply not enough to assert subjective pain. There must also be some clinical evidence which would substantiate the possible existence of some pain. If so, a credibility analysis is performed. In this case, the credibility analysis weighs against Plaintiff. Her own contradictory reporting of side effects is enough to discredit her. Further, the same assessment of Plaintiff's credibility by the ALJ, which is the subject of Plaintiff's third issue, is relevant in assessing whether her complaints of side effects of medications are credible. As will be shown, the Court upholds the ALJ's determination of Plaintiff's lack of credibility regarding subjective pain. That finding cannot be separated from a credibility finding concerning her assertions as to side effects of medications.

For the foregoing reasons, the Court finds no error with regard to the second issue.

### III

### THE ALJ MADE PROPER CREDIBILITY FINDINGS

In his decision, the ALJ made adverse credibility findings against Plaintiff regarding claims of disabling or excess pain, and substantiated them with seven articulated reasons. (AR 10-11.) The question is whether these constitute "clear and convincing" reasons to reject her testimony. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir.

1995). Here, the Court determines that the reasons cited are sufficient and credible and do constitute a clear and convincing basis upon which to reject Plaintiff's credibility. Indeed, as the ALJ observed, no treating or examining physician has ever opined that she was permanently or totally disabled. (AR 10.) Second, as the ALJ noted, Plaintiff continued to smoke cigarettes against medical advice, in a case in which she asserts severe subjective symptoms such a shortness of breath and fatigue, and indeed suffers from chronic obstructive pulmonary disease ("COPD") and asthma. (AR 12.) The ALJ was entitled to rely upon Plaintiff's self-destructive behavior and failure to follow a proper course of treatment in assessing her credibility. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

Next, the ALJ found that although Plaintiff has complained of back and knee pain, there is no evidence of severe degenerative disc disease in her lumbar spine or degenerative joint disease of either knee. She has not made recurrent complaints of such symptoms to any of her treating or examining sources. There is no evidence that she cannot lift and carry and least ten pounds frequently or 20 pounds occasionally. The ALJ was entitled to consider objective medical evidence in determining the severity of her alleged symptoms. See Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)(en banc). Similarly, the ALJ noted that Plaintiff has not had extensive treatment for neck pain, has not had neck surgery, nor has it been recommended that she undergo such treatment. A lack of extensive medical treatment is relevant in assessing credibility. See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

Next, although Plaintiff has a history of suffering from Hepatitis C, she has not had any treatment for it, and recently denied

8

having any symptoms.

Despite Plaintiff's claims of depression and anxiety that the ALJ noted, there has been no evidence of any hospitalization, emergency room treatment for mental health, or similar treatment.  Again, the lack of treatment for complained-of severe medical and mental problems is relevant in assessing credibility.

The ALJ is not required to believe all complaints of pain or other symptoms.  See Sample v. Schweiker, 649 F.2d 639, 642 (9th Cir. 1982).  Here, the ALJ articulated specific and legitimate reasons which amount to a clear and convincing basis upon which to reject Plaintiff's subjective complaints.

**IV**

**THE ALJ PROPERLY CONSIDERED THE TREATING PSYCHIATRIST'S OPINION**

Plaintiff points to a treatment note of an individual whose name she does not apparently know, but speculates to be Dr. Ferrer, who on October 29, 2007, assessed a global assessment of functioning ("GAF") of 45. (AR 312.)  Plaintiff indicates this is indicative of serious symptoms such as suicidal ideation, severe obsessional rituals, or similar impairments. (JS at 18.)  Plaintiff asserts error because the ALJ did not reference or evaluate this supposed opinion of a treating physician. (Id.)

First, the Court agrees with the Commissioner that this individual, presumably Dr. Ferrer, is not a treating physician, because there is only one note of one date that he ever saw Plaintiff. (See 20 C.F.R. §416.927(d)(2).)

With regard to utilizing a GAF score to reflect a mental impairment, this Court has often observed that such evidence is not

9

persuasive.

The GAF scale is intended to reflect a person's overall level of functioning at or about the time of the examination, not for a period of at least 12 consecutive months, which is required for a finding of impairment or disability. (See 20 C.F.R. §§416.905, 416.920(c)(2006).)

GAF scores are intended to be used for clinical diagnosis and treatment, and do not directly correlate to the severity assessment set forth in Social Security regulations. (See Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000), and American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, Text Revision 33 (4th Ed. 2000).

For the foregoing reasons, the Court finds no error with regard to the ALJ's assessment of the treatment notes of Dr. Ferrer.

The decision of the ALJ will be affirmed.  The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: January 20, 2010                     /s/
                                     VICTOR B. KENTON
                                     UNITED STATES MAGISTRATE JUDGE